TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: OAK-E-B
----------------------------------------------------------------------

FROM: 10579062
TO:
SUBJECT: SF95_WrightCStMatFacts
DATE: 01/24/2017 12:24:03 PM

RECEIVED

JAN 27 2017

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY: _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

CHARLES WILLIAM WRIGHT, JR., 08410-379          PLAINTIFF

V.      2:15-CV-2734 PM/KK

UNITED STATES                                    DEFENDANT

PLAINTIFF'S VERIFIED STATEMENT OF MATERIAL FACTS IN SUPPORT OF 1ST MOTION FOR SUMMARY JUDGMENT

Comes now Plaintiff and for his statement of material facts in support of his first motion for summary judgment, and states the following facts on oath or affirmation:

1. For administrative convenience, Plaintiff has endeavored to aggregate the important facts in this document and other documents filed herewith, to limit the need to refer to other documents such as the verified complaint.

2. Plaintiff is contemporaneously herewith submitting a separate set of exhibits for filing. Plaintiff incorporates all the said exhibits into this pleading, as if set forth herein word for word, to the extent legally appropriate.

3. Plaintiff fell on ice from a dripping water fountain nearby to the pill line window, at FCI Oakdale-1, a federal prison.

4. Said ice was hidden beneath a light cover of wind driven snow and thus not readily apparent.

5. Other walkways of the prison compound compound had been cleared of snow, and salt had been applied.

6. The ice and snow in the vicinity of the pill line water fountain had not been cleared or salted.

7. Plaintiff injured his shoulder/arm in the fall.

8. The employee working pill line said words to the effect that Plaintiff would "get up when he gets cold enough."

9. Some time ago, Oakdale took all the warm liners out of the coats, leaving only a thin shell that does not protect adequately against cold weather.

10. On information and belief, Oakdale-1 currently has one of the most beloved inmates on the compound, a faithful worker in Education, in SHU (Special Housing Unit, or jail for the prison) at least in part because a prison guard named Mr. LeJeune thought he was wearing a coat that still had a warm liner in it, tackled him, took him to the ground, and took the warm coat.

11. The exhibits in Plaintiff's submission taken from the two Bates stamped BEMR (Bureau Electronic Medical Records) are true and correct copies of said documents.

12. The remaining exhibits are true and correct copies of the documents that they purport to be.

13. The abstract of the BEMR record (Plaintiff's Exhibit 16) is a fair and reasonable summary of the relevant medical records.

14. Plaintiff's timeline of events is a fair and reasonable list of events and documents showing the timeframes for relevant events.

15. Plaintiff's records submitted herewith fairly and reasonably establish liability for Plaintiff's injury and damages.

16. On information and belief, the records concerning Oscar Stilley's employment at Forrest City Food Service are copies of

1

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: OAK-E-B
----------------------------------------------------------------------------------------

the original file, which Stilley still has in his possession, available for examination.

17. On information and belief, Stilley got a similar set of records from Oakdale-1, which he signed after securing agreement to say only that he had been trained as a "spoon roller." Said documents should still be in Oakdale-1 Food Service files.

18. On information and belief, when Stilley submitted the electronic version of his requests to staff electronically, they were ignored.

19. On information and belief, Stilley then turned in hard copy.

20. On information and belief, Mr. Bergeron sent Stilley to SHU (Special Housing Unit, or jail for the prison) about 30 minutes after he turned in hard copy of those requests, angrily accusing Stilley of failing to sign the forms.

21. On information and belief, Stilley got out of SHU after the prison administration agreed to allow Stilley to sign only a statement of the true facts, which is to say that he was trained as a spoon roller only.

22. On information and belief, on Tuesday, 1-10-16, Stilley spoke with Assistant Food Service Administrator Mr. Resendez, about his requests dated 9-11-16. Mr. Resendez said that he had no duty to provide a written response.

23. On information and belief, Mr. Resendez caused Stilley to be sent to SHU later that day, on "SIS" investigation.

24. On information and belief, Stilley was released from SHU the next day just after noon.

25. Plaintiff presented requests and complaints to prison personnel both in writing and orally, concerning his injury and lack of treatment. See e.g. Pltf. Ex. 11-14.

26. Plaintiff made contemporaneous notes of events on the calendar marked as Pltf. Ex. 15.

27. Plaintiff has at all times relevant to this litigation made all reasonable efforts to obtain reasonable medical care in a reasonable time and a reasonable manner.

28. It is true, as set forth in Pltf. Ex. 37, Bates B119, that inmates are not to be informed of medical trips. Medical personnel are generally forbidden to tell the inmate of an appointment until it is time for the inmate to get ready to leave.

29. It is also true that primary authority and responsibility for medical care decisions remains with the DOJ-FBOP. Id.

30. During a meeting with Ms. Savant she told Plaintiff that she had been begging the authorities for a follow-up appointment with Dr. DeLapp. She was plainly upset about the fact that Plaintiff had gotten no care for the "pop" or even the routine follow-up appointment set up by Dr. David DeLapp. See Pltf. Ex. 16, Medical Abstract, page 1, entries for 11-1-16, (general med. workup) 11-17-16, (unrelated skin problem) and 12-7-16 (issuance of Medical Duty Status form for torn right bicep tendon.

31. Plaintiff suffers from back pain. Pltf. Ex. 16, p. 1, Bates A3-8; Id. pg. 3, Bates A39-42; Id. pg. 7, Bates B63-65; Id. pg. 13, Bates B174-175.

32. Plaintiff suffers from allergies that are sometimes not controllable by standard medications. Id., pg. 12, Bates B156.

33. The back pain as well as the shoulder pain would be materially lessened if Plaintiff had access to even a basic mattress such as those manufactured by Unicor.

34. On information and belief, Plaintiff could control most if not all of his allergies with a proper diet, allergy supplies such as pillow/mattress covers to control dust mites, etc.

35. In Plaintiff's experience, inmates were required to show up at Health Services no later than 6:45 to sign the "sick call" list.

36. However, most of the inmates could not be seen by medical personnel by 6:45.

37. Oakdale-1 claims to allow inmates to eat breakfast later, after sick call. However, in Plaintiff's experience, the chow hall was already locked when Plaintiff left sick call, and he could not get anyone to open the door to let him in to eat.

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: OAK-E-B
---

38. Oakdale-1 requires a $2 co-pay for visits to Health Care not initiated by medical staff, even if the sick call visit is for a chronic issue such as the one involved in this litigation. When Plaintiff had no job and no money, he was still allowed to visit sick call. However, if the inmate has any money, even a small amount, they will take $2 for visits to Health Services.

39. When Plaintiff first talked to Dr. David DeLapp about my injury, he told Plaintiff that excessive delay in seeking the medical care had rendered repair of the torn bicep impractical if not impossible.

40. The following paragraphs contain the complete language (but not comments) of Expected Practices, (EP) taken verbatim from "Standards for Adult Correctional Institutions, 4th Edition" (Standards, 4th Ed.).

41. EP 4-4135 DAYROOMS
    Space Requirements
   Dayrooms with space for varied inmate activities are situated immediately adjacent to the inmate sleeping areas. Dayrooms provide a minimum of 35 square feet of space per inmate (exclusive of lavatories, showers, and toilets) for the maximum number of inmates who use the dayrooms at one time, and no dayroom encompasses less than 100 square feet of space (exclusive of lavatories, showers, and toilets)."

42. EP 4-4136 DAYROOM FURNISHINGS
   Dayrooms provide sufficient seating and writing surfaces. Dayroom furnishings are consistent with the custody level of the inmates assigned.

43. EP 4-4139 SHOWERS
   Inmates have access to operable showers with temperature-controlled hot and cold running water, at a minimum ratio of one shower for every eight inmates, unless national or state building or health codes specify a different ratio. Water for showers is thermostatically controlled to temperatures ranging from 100 degrees Fahrenheit to 120 degrees Fahrenheit to ensure the safety of inmates and to promote hygienic practices.

44. Plaintiff lives in a housing unit with approximately 82 cells, which has 10 showers.

45. Oakdale-1 staff routinely assign 2 inmates per cell.

46. Within the past 2 years, when this overcrowding wasn't enough to satisfy the DOJ-FBOP, the 3 dayrooms were converted to living quarters, with 2 cells cleaned out to serve as toilets for inmates in the dayrooms.

47. For many months, the dayrooms and 2 cells used for toilets for overflow housing have been empty and locked, in Plaintiff's housing unit and other housing units. Some of the time the dayrooms have had beds and lockers, other times they have been empty and bare of equipment.

48. Despite repeated polite request, DOJ-FBOP personnel refuse to allow inmates to use the empty dayrooms and toilets.

49. Defendant belatedly responded to Plaintiff's requests for admission, reproduced at Docket #18, Ex. 2, by response dated 12-14-16. The government denied each and every requested admission.

50. EP 4-4381 PROVISION OF TREATMENT (MANDATORY) reads as follows:
   "Clinical decisions are the sole province of the responsible clinician and are not countermanded by nonclinicians."

   COMMENT: (Copied verbatim) The provision of health care is a joint effort of administrators and health care providers and can be achieved only through mutual trust and cooperation. The health authority arranges for the availability of health care services; the responsible clinician determines what services are needed; the official responsible for the facility provides the administrative support for making the services accessible to offenders.

51. Ms. Savant, Ms. Peloquin, and Mr. Galante have all told Plaintiff about a policy of "One injury at a time." Mr. Galante has made this statement approximately 10 times. However, these admonitions do not appear at any time within the medical record. Rather, the medical record repeatedly states the Plaintiff has been given counseling on "Access to Care."

52. In the recent cold weather at Oakdale-1, DOJ-FBOP personnel turned off the water to the water fountain at pill line, and dispensed water in a big red portable cooler, and put salt on the ice that formed from water dropping off the roof and refreezing on the sidewalk. These precautions were sufficient to provide a safe environment for pill line during that time.

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: OAK-E-B
-----------------------------------------------------------------------------------------

VERIFICATION
Plaintiff by his signature below pursuant to 28 USC 1746 declares under penalty of perjury that the foregoing facts are true and correct.

)
)
By: _____       Date 1-25-17
Charles W. Wright, Jr.
FCI Oakdale-1
PO Box 5000
Oakdale, LA 71463-5000

CERTIFICATE OF SERVICE
Plaintiff by his signature above pursuant to 28 USC 1746 declares under penalty of perjury that this pleading was placed in the prison outgoing mailbox on the date stated, with sufficient 1st class postage attached, addressed to the clerk of the court for filing and service via CM/ECF.