UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**CHARLES W. WRIGHT, JR.**        CASE NO. 2:15-CV-02734

**VERSUS**                         JUDGE JAMES D. CAIN, JR.

**UNITED STATES OF AMERICA**       MAGISTRATE JUDGE KAY

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment filed by the defendant, the United States ("government"). Doc. 69. This motion relates to the suit brought by plaintiff, Charles William Wright, Jr., against the United States under the Federal Tort Claims Act. Plaintiff is proceeding pro se in forma pauperis in this matter. The motion is unopposed.

### I.
### BACKGROUND

Plaintiff is an inmate in the custody of the Bureau of Prisons ("BOP") and is incarcerated at the Federal Correctional Institute in Oakdale, Louisiana ("FCIO"). He states that he suffered serious injury on January 29, 2014, when he slipped on an icy pavement at FICO while waiting for his medication at the "pill line." Doc. 1, p. 2. Plaintiff also complains of his medical care following the fall. *Id.* at 3–5. Specifically, he alleges that no medical care was provided to him for the week following his fall. *Id.* at 3. He states that one night that week, a tendon broke loose in his injured arm, causing a "popeye" mass that put him in excruciating pain. *Id.*

Records show that plaintiff was seen at FCIO Health Services on February 11, 2014, for a complaint of shoulder pain relating to his fall. Doc. 41, att. 6. At that examination the medical officer observed the mass on plaintiff's arm and ordered an X-ray. *Id.*; *See* doc. 41, att. 7. The officer diagnosed plaintiff with a ruptured tendon and requested an orthopedic consult, which was approved the following day. Doc. 41, atts. 6 & 8. Plaintiff visited Health Services complaining of arm pain on February 26, April 14, and June 17, 2014, and was prescribed pain medication, issued an arm sling, and given a bottom bunk pass. Doc. 41, att. 9, pp. 4–5, 6–7, 8–9. His orthopedic consult occurred on July 18, 2014, and he was diagnosed with a rotator cuff tear and bicep rupture. Doc. 41, att. 10, pp. 3–5. The orthopedist recommended an MRI of the shoulder and noted that the bicep did not require surgery. *Id.* Plaintiff was given a steroid injection and ordered to continue his pain medication and to wear his sling as needed for his comfort. *Id.*

The MRI was not performed until April 1, 2015. *See* doc. 41, att. 11. Based on that imaging, the orthopedist determined that plaintiff should undergo a rotator cuff arthroscopy and entered an order for that procedure on May 1, 2015, with a target date of August 5, 2015. Doc. 41, att. 3. The procedure was performed on August 22, 2016. Doc. 41, att. 5, pp. 3–5. While awaiting surgery, plaintiff exhausted his remedies with the BOP. Doc. 1, att. 2. He then instituted this action on November 23, 2015, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, claiming negligence by the government in the maintenance of FCIO premises and in his medical care. Doc. 1. On January 4, 2016, he amended the title of his complaint to read: "Complaint by Prisoner Under 28 U.S.C. § 1331

or *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)." Doc. 5.

The government filed a motion to dismiss relating to the premises maintenance claim, which this court granted. *See* doc. 37; doc. 53 (judgment adopting report and recommendation). As to plaintiff's medical care claim, both parties sought summary judgment. Docs. 32, 41. The government argued plaintiff would be unable to prove the essential elements of a medical malpractice claim because he had not designated an expert witness. Doc. 41. Plaintiff argued that the government had provided inadequate responses to the complaint and discovery therefore there was no genuine issue as to any material fact. Doc. 32. The magistrate judge assessed plaintiff's claim under the relevant standards governing Louisiana medical malpractice claims and agreed with the government that plaintiff's allegations did not rise to the level where she could infer negligence without an expert. Doc. 54. Accordingly, she recommended that plaintiff's medical care claim be dismissed with prejudice. *Id.* The district court rejected the recommendation and denied both motions for summary judgment. Doc. 56. It suggested the suit was more appropriately assessed as civil rights claim for violation of plaintiff's Eighth Amendment rights, rather than as a medical malpractice claim. *Id.* at 3.

On June 18, 2019, the government filed the instant motion for summary judgment. Doc. 69. It maintains that plaintiff's claim is properly assessed as a medical malpractice claim but argues that, under any standard, plaintiff received appropriate medical treatment. *See* doc. 69, att. 1, p. 17. In support of its motion it provides the expert opinion of Dr. Shawn Granger, an orthopedic surgeon. Doc. 69, atts. 3–4. Dr. Granger reviewed plaintiff's

medical records and found the treatment received by plaintiff in this case to be "appropriate and reasonable." Doc. 69, att. 4, p. 6. The motion is unopposed.

## II.
## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable

to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). When the motion is unopposed, the moving party retains its burden of showing that there is no genuine issue of material fact. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995). Under the court's local rules, however, failure to file an opposition means that the moving party's statement of uncontested material facts is deemed admitted. Local Rule 56.2.

## III.
## LAW & APPLICATION

### A. Legal Standards

#### 1. Federal Tort Claims Act

The Federal Tort Claims Act authorizes civil actions for damages against the United States for injury caused by the negligence of a government employee, under circumstances in which a private person would be liable by the law of the state in which the act or omission occurred. *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008) (citing 28 U.S.C. §§ 1346(b)(1), 2674)). Liability for medical malpractice claims brought under the FTCA is controlled by state law. *Id.* (citing *Ayers v. United States*, 750 F.2d 449, 452 n. 1 (5th Cir. 1985)). Thus, plaintiff's allegation of negligence in the provision of his medical care by government employees who were medical professionals is a claim of medical malpractice, then it will be evaluated under Louisiana law.

The Louisiana Medical Malpractice Act ("LMMA"), LA. REV. STAT. § 40:1231.1 *et seq.*, governs claims of malpractice against qualified health care providers. Under the LMMA, malpractice is defined as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." LA. REV. STAT. § 40:1231.1(A)(13). A plaintiff claiming medical malpractice by a physician must establish, by a preponderance of the evidence: (1) the defendant's standard of care, (2) his breach of that standard, and (3) a causal connection between the breach and the claimant's injuries. LA. REV. STAT. § 9:2794(A). Nurses who perform medical services are subject to the same standard of care as physicians: to exercise the degree of skill ordinarily employed under similar circumstances by members of the profession in good standing in the same community or locality, and to use reasonable care and diligence, along with their best judgment, in their application of skill to the case. *Little v. Pou*, 975 So.2d 666, 674–75 (La. Ct. App. 2d Cir. 2008). Expert testimony is usually required to establish the applicable standard of care. *Schultz v. Guoth*, 57 So.3d 1002, 1006–07 (La. 2011). However, an exception is made where "the negligence is so obvious that a lay person can infer [it] without the guidance of expert testimony." *Id.*

## 2. Deliberate indifference

Deliberate indifference to a prisoner's serious medical needs by prison officials violates the Eighth Amendment and therefore gives rise to a claim for damages against federal officers under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Under this theory, a prison official is not liable unless he both knows of and disregards an excessive risk to inmate health or

safety. *Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind;" thus the test is "[s]ubjective recklessness" as used in criminal law. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997) (quoting *Farmer*, 511 U.S. at 838–40). A prisoner's disagreement with his treatment does not constitute deliberate indifference, absent exceptional circumstances. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Instead, the prisoner must submit evidence to show that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct evincing a wanton disregard for serious medical needs. *Id.*

## B. Application

In reliance on the Granger opinion, the government asserts that the plaintiff's treatment fell within the applicable standard of care. Dr. Granger cited his experience in the Veteran's Administration, as an active duty Army orthopedic surgeon, as a private practitioner in a rural setting, and as parish coroner. Doc. 69, att. 4, p. 6. Based on a review of plaintiff's records, he found the treatment received to be "appropriate and reasonable" and the time course "reasonable and typical of the obstacles to scheduling studies in a closed healthcare system . . . ." *Id.* at 5–6. He noted the particular difficulties of coordinating with outside providers from such a system, and drew a comparison to wait times observed for similar injuries in the VA. *Id.*

Plaintiff provides nothing to counter this opinion, and the court finds it to be well-grounded and persuasive. Defendant has carried its burden of showing that the plaintiff's

care did not violate the appropriate standard under either theory raised. Accordingly, it is entitled to judgment as a matter of law.

### IV.
### CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment [doc. 69] will be **GRANTED**.

**THUS DONE** in Chambers on this \_\_\_22\_\_\_ day of \_\_\_July\_\_\_, 2019.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**